[Civ. No. 17550. Second Dist., Div. Two. May 26, 1950.]

JACK WILSON, Respondent, v. LORTON CLOUGH et al., Defendants; MARTIN S. RYAN, Appellant.

Martin S. Ryan, in pro. per., for Appellant.

Milton A. Krug for Respondent.

WILSON, J.—From a judgment in favor of plaintiff in an action for breach of contract and to recover loss of profits, defendant Martin S. Ryan appeals.

As grounds for reversal appellant contends the evidence is insufficient to support the findings and that the court erred in not upholding the defense of the statute of frauds.

The trial court found that defendants Lorton Clough, Martin S. Ryan and Clifford Detty were copartners doing business under the firm name of Wilson Motors; that on June 28, 1947, defendant Ryan entered into an agreement in writing with plaintiff whereby, among other things, it was agreed "seller [Jack Wilson] to receive three new model Hudson cars one each for three consecutive months beginning when new models delivered"; that it was orally agreed between plaintiff and defendants that the three new model Hudson cars were to be delivered to plaintiff at the wholesale cost thereof to defendants; that by reason of defendant Ryan's failure to deliver the automobiles to plaintiff as agreed, plaintiff had suffered damage in the loss of profits from the resale

in the amount of $1,500; that the copartnership of Wilson, Ryan and Clough was dissolved by the three copartners by an agreement in writing executed on June 28, 1947; that defendant Ryan was the attorney for and had represented plaintiff Jack Wilson over a period of many years up to and including June 28, 1947; that plaintiff relied upon and had confidence in Ryan and did with such reliance and confidence accept the agreement executed by Ryan on June 28, 1947; that at that same time and place plaintiff delivered to Ryan an executed bill of sale of all his right, title and interest in and to the copartnership and partnership assets of Wilson, Ryan and Clough, and as a part of the same transaction and as additional consideration for the execution of the bill of sale to Ryan, plaintiff accepted the agreement of Ryan dated June 28, 1947; that Ryan represented to plaintiff the agreement was a valid agreement and Ryan is estopped to urge the statute of frauds with reference to the contract; that plaintiff sold his one-fourth interest in and to the partnership of Wilson, Clough and Ryan to the latter and all partnership indebtedness, if any, theretofore existing between Wilson and Ryan as partners was fully and finally settled and adjusted and an account was stated between Ryan and plaintiff as of June 28, 1947.

Appellant Ryan contends that the finding that he purchased the 25 per cent interest of plaintiff in the Hudson dealership and agreed to deliver three new model Hudson cars to plaintiff as a part of the purchase price is not supported by the evidence. It is appellant's contention that plaintiff sold his one-fourth interest to Clifford Detty and that Detty agreed to deliver the three new cars at the retail price; that appellant merely acted on behalf of Detty in consummating the transaction.

There are in evidence two bills of sale signed by plaintiff, each of which is dated June 28, 1947; one is from Jack Wilson to Clifford Detty and the other is from Jack Wilson to Martin S. Ryan. The two bills of sale are identical with the exception of an added paragraph in the one to Detty which reads: ''This Bill of Sale is being drawn in conformity with that certain agreement between Messrs. Detty and Wilson, dated May 29, 1947, relating to the sale of Wilson Motors.'' The agreement referred to is for the sale of plaintiff's 25 per cent interest in Wilson Motors to Detty for the sum of $7,500 together with the sum of $2,500 representing plaintiff's capital investment

plus the undivided profits up to and including May 31, 1947. The agreement of May 29, 1947, contains a clause reading: "Subject to three new model Hudsons at retail price on basis of one a month beginning when available to dealer." There is also in evidence a third bill of sale which appears to be a carbon copy of the bill of sale from Wilson to Ryan and which contains an added clause reading "Seller to receive three new model Hudson cars one each for three consecutive months beginning when new models delivered." This bill of sale is also dated June 28, 1947, and is signed by Ryan.

Appellant and respondent are in accord that appellant brought the above described documents to respondent's office on June 28, 1947; that the bill of sale to Detty was executed by respondent first; that thereafter and as part of the same transaction respondent executed the bill of sale to appellant; that appellant gave respondent his personal check for some $15,000; that the check represented the amount agreed upon for respondent's 25 per cent interest in Wilson Motors, being $7,500 plus the return of his capital investment of $2,500 and the undivided profits due respondent to June 1, 1947; that appellant advanced the money for Detty and expected to be reimbursed by Detty; that the purpose of the bill of sale to Ryan was to protect him and as security until such time as he was reimbursed by Detty. Respondent testified as follows:

"Q. But at any rate, your deal was made with Mr. Detty wasn't it? A. My deal was made, I guess with Mr. Detty through Mr. Ryan. The only thing I knew was what papers Mr. Ryan brought me and what Mr. Ryan told me. I never talked to Mr. Detty . . .

"THE COURT: Why, I thought you only had a 25 per cent interest and sold that to Martin S. Ryan. A. No, sir."

Respondent testified that he "sold the last interest to Ryan because he wanted the bill of sale in his name instead of Detty's"; that Ryan gave respondent his check for fifteen thousand and some odd dollars and told him he was advancing the money for Detty and expected to get it from Detty; that in case Detty should die over the week end, he wanted to have the bill of sale to him (Ryan) so he would have some protection for the money he was putting up; that respondent thought he was selling the interest in the business to Ryan and "Ryan was going to protect himself from Detty until Detty got the money." Respondent then testified as follows:

"Q. So you understood at the time that the deal was with

Detty? A. Well, it was with Ryan, but Ryan was protecting himself with Detty. Ryan was handling it for Detty; and for me too, as far as that is concerned.

"Q. Yes. But you understood that the bill of sale to Detty was to be in effect did you not? A. No, I understood that he wanted that one to protect himself and that he would use the other one until that amount of money came from Detty to him.

"Q. By THE COURT: As I understand it, at the time you were paid that $15,000 he said he was paying it for Mr. Detty; is that it? A. Well, he meant that he was paying me the proportion that Detty owed me and the other portion was in the bank, belonging to me already."

Respondent further testified that he received $7,500 for his interest in the franchise and the profits for the month of May as recited in the agreement of May 29th.

Appellant and respondent each testified that the reason for respondent's selling his interest to Detty was because the Hudson Motor Company had threatened to cancel their franchise since none of the partners was managing the agency; that their franchise was coming up for renewal on July 1st, and it would be more likely to be renewed if the interest were sold to someone who would manage the agency. Appellant testified, and his testimony was not disputed, that Detty went to work in the agency about June 1st, that he was approved by the Hudson Motor Company in July but that appellant was not reimbursed by Detty for several months thereafter because Detty did not have the money until a bank loan was arranged; that he delivered the bill of sale to Detty prior to the time he received the money from him and after Detty had been approved by the Hudson Motor Company he was made a partner retroactively from June 1st and received his share of the profits from that date.

From the testimony of appellant and respondent it is apparent that the latter sold his 25 per cent interest to Detty; that the reason for selling to Detty was because none of the partners could or would manage the agency and this was necessary under their franchise which was coming up for renewal on July 1st. Respondent executed a bill of sale to Detty and received therefor appellant's personal check in the amount called for by the agreement of May 29th, between respondent and Detty. Appellant acted as the agent of Detty and ad-

vanced the money for which he expected to be and was later reimbursed by Detty. Appellant asked respondent to execute a bill of sale to him merely for security and respondent so understood the transaction. Therefore, the evidence does not support the finding that appellant purchased respondent's 25 per cent interest in the Hudson dealership and that he agreed as part of the purchase price to deliver three new model Hudson cars to respondent and respondent is not entitled to a judgment against appellant for damages for alleged loss of profits on the three Hudson cars.

In view of our conclusion that the evidence does not support the last mentioned finding it is not necessary to consider the other findings complained of which are on the same or related issues, or appellant's defense of the statute of frauds.

Judgment reversed.

Moore, P. J., and McComb, J., concurred.